# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 50056 | **DATE** | 6/14/2011 |
| **CASE TITLE** | U.S.A. vs. James T. King | | |

**DOCKET ENTRY TEXT:**

For the reasons stated below, the court denies the § 2255 motion as to all claims, denies the request for an evidentiary hearing, and dismisses this cause in its entirety.

*Philip G. Reinhard*

■ [ For further details see text below.]   Notices mailed by Judicial staff.

### STATEMENT - OPINION

James T. King, a federal prisoner, filed a motion pursuant to 28 U.S.C. § 2255, challenging his conviction of conspiracy (18 U.S.C. § 846), attempted possession of cocaine with the intent to distribute (18 U.S.C. § 841(a)(1)), carrying a firearm in relation to a drug trafficking crime (18 U.S.C. § 924c), felon in possession of a firearm (18 U.S.C. § 922(g)) and his sentence of 360 months' imprisonment on the drug charges and a consecutive term of 60 months' imprisonment on the § 924c conviction. The Government has filed a response, and King has not filed a reply. King also requests an evidentiary hearing.

**Background**

King and co-defendants, Demarlon Lewis and Joaquin Tankey, were charged with plotting to rob a cocaine stash house, which in reality did not exist. Tankey pleaded guilty, but Lewis and King opted for a jury trial.

The evidence at trial primarily consisted of the testimony of DEA agent Gomez and various recorded conversations involving defendants. Neither Lewis nor King testified.

According to Gomez, a confidential informant (CI) initially discussed with Tankey a plan to rob a cocaine stash house. Subsequently, the CI arranged a meeting between Gomez and Tankey. Gomez told Tankey a story that he was a disgruntled courier for Mexican drug traffickers who wanted to arrange the theft of 20 kilograms of cocaine from a stash house. Gomez testified that Tankey agreed to assemble a "crew" to rob the stash house.[1]

After Tankey had recruited King, Gomez warned them that the drug dealers at the stash house would be heavily armed. Gomez reiterated that there would be 20 kilos of cocaine at the house. Gomez offered both Tankey and King a chance to back out, but they indicated they wanted to go through with the plan.

On the day of the planned robbery, Tankey and King arrived with Lewis. Lewis told Gomez he was willing to proceed with the robbery of the stash house. Lewis also indicated to Gomez that he knew there would be 20 kilos of cocaine in the house.

Gomez and defendants proceeded to a storage facility which Gomez had explained was where he wanted them to drop off his share of the cocaine. Upon arriving at the storage facility, defendants were

arrested. The arresting officers found a loaded handgun on Tankey and another gun in defendants' car.

Prior to trial, King and Lewis moved for a bill of particulars as to whether the Government was basing its case on their conspiring to rob the stash house or only Gomez. The court denied the motion for a bill of particulars. See United States v. King, 06 CR 50074, Order dated Feb. 15, 2008.

The jury found both defendants guilty on all counts related to the conspiracy and drug offenses. The jury also found that the drug offenses involved five or more kilos of cocaine. Additionally, the jury also found King guilty of both firearm offenses.

King filed a direct appeal in which he did not challenge the sufficiency of the evidence underlying his conviction. United States v. King, 350 Fed. Appx. 74, 76 (7th Cir. 2009). Instead, King raised two issues: (1) whether the court abused its discretion in denying the motion for a bill of particulars; and (2) whether the evidence was sufficient to support the jury finding that the offense involved at least five kilos of cocaine. King, 350 Fed. Appx. at 76-77. The Court of Appeals rejected both contentions and affirmed King's conviction and sentence.

In this § 2255 motion, King claims that both his trial and appellate counsels were ineffective. He further asserts other claims related to his conviction and sentence and not cast in terms of ineffective assistance of counsel.

In order to establish ineffective assistance of counsel, a petitioner must establish that: (1) his attorney's performance fell below an objective standard of reasonableness; and (2) he suffered resulting prejudice. Gentry v. Sevier, 596 F. 3d 838, 851 (7th Cir. 2010). Regarding performance, a petitioner must overcome a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Gentry, 596 F. 3d at 851. In order to establish sufficient prejudice resulting from counsel's unprofessional errors, a petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Gentry, 596 F. 3d at 851.

The failure of appellate counsel to raise a particular issue on appeal requires the court to compare the issue not raised with the issues that were raised. Lee v. Davis, 328 F. 3d 896, 900 (7th Cir. 2003). If the issue that was not raised is both obvious and clearly stronger than the issues that were raised, the appellate counsel's failure to raise the neglected issue is objectively deficient. Lee, 328 F. 3d at 900-01. Prejudice is established if the issue not raised may have resulted in a reversal of the conviction or an order for a new trial. Lee, 328 F. 3d at 901. This means there must be a reasonable probability that the issue not raised would have altered the outcome of the appeal had it been raised. Lee, 328 F. 3d at 901.

**Claims of Ineffective Assistance of Counsel**

King's first claim is that his trial counsel was ineffective for failing to request an instruction or special verdict that would have directed the jury to unanimously determine the "means and manner" as to how King accomplished the object of the charged conspiracy. It was not ineffective for trial counsel to have failed to seek such an instruction or special verdict, however. While there are some unique statutory offenses, such as the continuing criminal enterprise statute (21 U.S.C. § 848), that involve a series of potential violations for which the jury must determine which particular violations were committed, generally, a jury need not decide unanimously which of several possible sets of facts establish a particular element of an offense. United States v. Gibson, 530 F. 3d 606, 611-12 (7th Cir. 2008), citing Richardson v. United States, 526 U.S. 813 (1999). In other words, in most instances a jury need not decide unanimously which of several possible means a defendant used to commit an element of a crime. Gibson, 530 F. 3d at 612. It is perfectly appropriate for some jurors to conclude that a defendant used one particular means to commit the crime while other jurors find that the defendant used another means. Gibson, 530 F. 3d at 612. The jury need only be unanimous in its determination a defendant committed the particular element at issue. Gibson, 530 F. 3d at 612.

Here, the drug offenses are the type of crimes in which the elements may be established by various factual determinations as opposed to an offense such as a continuing criminal enterprise in which each of the series of violations is considered a distinct element of the offense which has to be proved. Thus, it was

**STATEMENT - OPINION**

acceptable for the jury here to unanimously conclude that King had committed the necessary elements of the drug offenses while not being unanimous as to exactly how he did it. Accordingly, it was not ineffective for trial counsel to have failed to seek an instruction or special verdict in that regard.

King's next claim is that his appellate counsel was ineffective for failing to argue that the evidence was insufficient to convict him of conspiring or attempting to possess five or more kilograms of cocaine. This claim fails as drug type and quantity are not substantive elements of the charged offenses and were only relevant for sentencing purposes. See United States v. Kelly, 519 F. 3d 355, 362-63 (7th Cir. 2008).[2] Thus, appellate counsel was no ineffective for failing to raise such an issue on direct appeal.

King next contends that his appellate counsel was ineffective for failing to raise the issue of whether there was an unlawful variance between the charged drug offenses and the actual evidence relied on by the government at trial and further failing to raise an issue that the government's arguments combined with the court's instructions constructively amended the indictment. Specifically, King maintains that the evidence was insufficient to prove that he conspired or attempted to possess more than five kilos of cocaine because it is possible that he only conspired to rob the drug courier for which there was no evidence to support a finding that the courier possessed more than five kilos of cocaine.

This claim is defective as it depends upon a misunderstanding of what the government was required to prove as to the charged offenses. While the government ultimately needed to prove that King possessed more than five kilos of cocaine for sentencing purposes, it did not need to prove any particular amount to support the underlying conviction. When the evidence is viewed in a light most favorable to the prosecution, see Kelly, 519 F. 3d at 362, citing Jackson v. Virginia, 443 U.S. 307, 319 (1979), it is more than sufficient to support a jury finding based on either possible set of facts as to how King committed the charged offenses. This is so because even if the jury found that King intended to rob the drug courier instead of the stash house it was reasonable to conclude that the courier possessed some amount of cocaine. Moreover, it is also apparent from the jury's separate finding that more than five kilos of cocaine was involved that the jury actually concluded that King in fact planned to rob the stash house as opposed to the courier. This conclusion is further supported by the Court of Appeals statement in King's direct appeal that "the proof that at least 5 kilograms was the target [of the conspiracy] is overwhelming." 350 Fed. Appx. at 76. Therefore, appellate counsel was not ineffective in this regard.[3]

In a related argument, King claims his appellate counsel was ineffective for failing to argue that the evidence was insufficient to prove him guilty of carrying a firearm in relation to a drug trafficking offense. Because this claim depends on King's claim that the evidence was insufficient to prove him guilty of the drug offenses, it also fails for the reasons stated above.

King's final claim of ineffective assistance of appellate counsel contends that appellate counsel failed to raise an issue of a violation of Brady v. Maryland, 373 U.S. 83 (1963). Specifically, King argues that the government failed to reveal that there were containers found in his co-defendant Tankey's car which contained clothing and personal items other than weapons.

This claim is non-meritorious as there was no basis for a Brady claim on appeal. As the court ruled at trial, there was no basis to conclude that the government actually suppressed evidence from King or the other defendants. Further, the evidence regarding the containers found in Tankey's car was not exculpatory in light of the fact the government never suggested the containers held firearms. Nor did the containers themselves necessarily support King's theory that he only planned to rob the courier as opposed to the stash house. Thus, it was not ineffective for appellate counsel not to have raised this issue on direct appeal.

**Other Claims**

King also raises additional claims that he was denied due process when the government engaged in outrageous conduct and that his sentence was both substantively and procedurally unreasonable. These claims are not cast in terms of ineffective assistance of counsel and were not raised on direct appeal. Claims that are raised for the first time in a § 2255 motion are procedurally barred if they could have been raised on

| STATEMENT - OPINION |
|---|
| direct appeal. <u>Sandoval v. United States</u>, 574 F. 3d 847, 850 (7th Cir. 2009). All of King's claims not based on ineffective assistance of counsel could have been but were not raised on direct appeal and are therefore waived. Further, King has not identified any cause and prejudice for such waiver. See <u>Sandoval</u>, 574 F. 3d at 851 n.1. Thus, the remaining claims are denied on that basis alone. Further, the outrageous governmental conduct defense is not recognized in this Circuit. See <u>United States v. Gustin</u>, 10- 276, slip op. at 2 (7th Cir. June 7, 2011). Additionally, to the extent King challenges the court's application of the Sentencing Guidelines, such claim is not cognizable in a § 2255 proceeding. See <u>Welch v. United States</u>, 604 F. 3d 408, 412 (7th Cir. 2010).<br>    For the foregoing reasons, the court denies the § 2255 motion as to all claims, denies the request for an evidentiary hearing, and dismisses this cause in its entirety. |

1. In reality, there was no stash house as the story told by Gomez was fictional.

2. The Court of Appeals has already ruled to this effect in King's direct appeal.

3. To the extent this argument reiterates King's previous claim that the jury was allowed to find him guilty based in part on the fact that he planned to rob the drug courier even though that theory was not charged in the indictment, the argument fails for the same reasons set forth by the court in its rejection of the prior claim.